UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KENDRA POSTELL,                             Case No. 16-13645

Plaintiff,                         Linda V. Parker
        v.                              United States District Judge

COMMISSIONER OF SOCIAL                 Stephanie Dawkins Davis
SECURITY,                               United States Magistrate Judge

Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 16, 20)**

## I.    PROCEDURAL HISTORY

### A.    Proceedings in this Court

On October 13, 2016, plaintiff Kendra Postell filed the instant suit.  (Dkt. 1).

The matter was initially assigned to District Judge Mark A. Goldsmith, who

referred this matter to Magistrate Judge Steven Whalen for the purpose of

reviewing the Commissioner's unfavorable decision denying plaintiff's claim for a

period of disability, disability insurance benefits, and supplemental security

income benefits.  (Dkt. 3).  The case was reassigned to District Judge Linda V.

Parker and the undersigned on January 31, 2017.  (Dkt. 12).  This matter is before

the Court on cross-motions for summary judgment.  (Dkt. 16, 20).

B.      Administrative Proceedings

Plaintiff filed a claim for a period of disability, disability insurance benefits, and Supplemental Security Income payments on July 23, 2010.  (Tr. 18).[1]  Plaintiff alleged disability beginning December 31, 2004.  (*Id.*).  The claims were initially disapproved by the Commissioner on August 8, 2011.  (*Id.*).  Plaintiff requested a hearing and on June 19, 2012, plaintiff appeared with counsel before Administrative Law Judge ("ALJ") Anthony R. Smereka, who considered the case *de novo*.  (Tr. 18).  In a decision dated September 28, 2012, the ALJ found that plaintiff was not disabled.  (Tr. 29).  Plaintiff requested a review of this decision. (Tr. 13-14).  The ALJ's decision became the final decision of the Commissioner when the Appeals Council, on January 24, 2014, denied Plaintiff's request for review.  (Tr. 1-4); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

Plaintiff appealed the decision to this Court and on August 6, 2015, Magistrate Judge Michael J. Hluchaniuk's filed a Report and Recommendation recommending remand, which was adopted by District Judge Linda V. Parker in a September 18, 2015 Opinion and Order.  (Tr. 659, 777-817; Civil Docket 14-11244).  On remand, the Appeals Council directed the ALJ to determine the effect

---

[1] The Administrative Record can be found at Dkt. 10.  References to its contents are denoted throughout this Report and Recommendation as "Tr." followed by the page number found in the lower right corner of the record.

of alcohol abuse on plaintiff's potential disability. (Tr. 659). Plaintiff alleged

disability since December 31, 2004. (*Id.*). Plaintiff appeared with counsel before

ALJ Smereka on remand on June 29, 2016. (*Id.*). In a decision dated August 10,

2016, the ALJ found that plaintiff was not disabled. (Tr. 673). Plaintiff did not

file a written objection. The ALJ's decision became the final decision of the

Commissioner 61 days from the date of the decision. (*See* Tr. 657).[2]

For the reasons set forth below, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment and defendant's motion for summary

judgment each be **GRANTED IN PART and DENIED IN PART**, and that the

findings of the Commissioner be **REVERSED AND REMANDED** for further

proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g).

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Plaintiff, who was born on May 6, 1981, was 23 years old on the alleged

disability onset date. (Tr. 671). She has past relevant work as an assembly person,

kitchen aide, cashier, hostess, hotel housekeeper, and retail clerk. (Tr. 671). The

---

[2] In the Notice of Unfavorable Decision, the Commissioner states that if the claimant does not file written exceptions and the Appeals Council does not review the ALJ's decision on its own, the decision will become final on the 61st day following the date of the decision. (Tr. 657). After the decision becomes final, the claimant may file a civil action in district court. (*Id.*). *See also* 42 U.S.C. 405(g) ("Any individual, after <u>any</u> final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision.").

ALJ applied the five-step disability analysis and found at step one that plaintiff had

not engaged in substantial gainful activity since December 31, 2004.  (Tr. 661).  At

step two, the ALJ found that plaintiff's alcohol abuse; major depression;

personality disorder, not otherwise specified; and anxiety disorder were "severe"

within the meaning of the second sequential step.  (*Id.*).  However, at step three,

the ALJ found no evidence that plaintiff's impairments singly or in combination

met or medically equaled one of the listings in the regulations.  (Tr. 662-65).

Thereafter, the ALJ assessed plaintiff's residual functional capacity ("RFC")

as follows:

> After careful consideration of the entire record, I find that
> the claimant has the residual functional capacity to
> perform a full range of work at all exertional levels but
> with the following non-exertional limitations: no
> exposure to hazards, including no work at unprotected
> heights or around dangerous moving machinery; no
> driving in the course of employment; ability for, but
> restricted to, unskilled work, meaning the ability to
> perform simple, routine, and repetitive tasks that requires
> little judgment to perform simple duties and may be
> learned in a short period of time; due to stresses, no work
> with the general public; no more than occasional (from
> very little to up to one-third of the workday) contact with
> co-workers or supervisors; and no work in fast
> production pace settings where the pace is set by others,
> such as conveyor belt or assembly line work.

(Tr. 665).  At step four, the ALJ found that plaintiff was unable to perform any past

relevant work.  (Tr. 671).  At step five, the ALJ denied plaintiff benefits because he

found that there were jobs that exist in significant numbers in the national economy that plaintiff could perform.  (Tr. 672-73).

      B.    <u>Plaintiff's Claims of Error</u>

      Plaintiff raises two arguments in her brief: that the ALJ erred in concluding that her severe impairments, singly or in combination, did not meet or medically equal Listed Impairment § 12.04 at Step Three, and that the ALJ assessed an inaccurate RFC because the ALJ failed to consider Dr. Tripi's residual functional capacity opinion.  (Dkt. 16 – Pl.'s Brief).

      Plaintiff argues that her impairments met or at least equaled Listed Impairment § 12.04 (depressive, bipolar, and related disorders).  (Dkt. 16, at p. 18-19).  Plaintiff cites a version of Listing 12.04 that was not in effect at the time of the hearing and argues that the ALJ did not properly assess 12.04.  (*Id.* at p. 19).  Plaintiff finds error in the ALJ's determination on the following paragraph "B" criteria: activities of daily living; concentration, persistence, or pace; and social functioning.  (*Id.* at p. 20).

      Regarding activities of daily living, plaintiff argues that the ALJ "cherry picked" evidence to support his conclusion that she has only mild deficits in this area.  The ALJ acknowledged that plaintiff's children were removed from her home, demonstrating that she struggled to maintain activities of daily living, but also acknowledged that she was able to get her children ready for school, bathe

them, and cook.  (Tr. 662).  Plaintiff argues that it is unclear how the ALJ

determined that she only had "mild" limitations with regard to her activities of

daily living, given that her "struggles" to care for her children resulted in the

termination of her parental rights, suggesting significant difficulties with activities

of daily living.  (Dkt. 16, at p. 20).

 As to social functioning, the ALJ opined that plaintiff's deficits in this area

were only moderate, relying on medical expert Dr. Jonas's opinion that plaintiff's

"ability to work in a fairly high pressured environment as a Sam's Club cashier,

without any noted difficulty with frequent public interaction, confirms she does not

have more than moderate deficits in social functioning despite allegations she does

not get along well with other people."  (*Id.* at p. 23, Tr. 662).  Plaintiff takes issue

with the ALJ's reliance on Dr. Jonas's opinion here because there is no evidence in

the record indicating whether plaintiff worked at Sam's Club with no difficulty

with frequent public interaction.  (*Id.*).

 Plaintiff also argues the ALJ erred in finding only mild limitation on

concentration, persistence, and pace.  (*Id.* at p. 24).  Plaintiff asserts that she has

memory problems, pointing to "Working Memory" test results ("Working Memory

63 – Extremely Low" (Tr. 1089); and, "Working Memory 66 – 1st percentile –

Extremely Low."  (Tr. 1103)), as well as her inability to consistently recount her

past work to medical professionals.  (*Id.* at p. 21).  Further, plaintiff states that the

record is replete with assessments, evaluations and progress notes documenting problems with concentration, citing Tr. 237, 305, 313, 320, 436, 525, 529, 536, 586, 591-593, 618, 623, 1069, 1077, 1093-1095, 1115.  (*Id.* at p. 24).

Plaintiff also takes issue with the ALJ's analysis of Dr. Zerba's consultative examination report.  (*Id.* at 19).  Dr. Zerba diagnosed plaintiff with major depressive disorder and panic disorder without agoraphobia, along with a GAF score of 49, signifying the seriousness of her mental impairment.  (*Id.*; Tr. 512).  According to plaintiff, the ALJ failed to "flesh out" Dr. Zerba's report.

Plaintiff also claims error in the ALJ's reliance on Dr. Jonas's testimony in general.  (Dkt. 16, at p. 19).  Plaintiff argues that Dr. Jonas' conclusions are flawed because his testimony shows that his opinion rested on his perception that plaintiff was capable of working for two-and-a-half years with one employer, that she only left that employment because she was pregnant, and that she worked for 90 days at Sam's Club,[3] without a noted problem.  (*Id.* at p. 20-21; Tr. 721-22).  However, plaintiff maintains that there is no evidence that she worked as Dr. Jonas characterizes—for 90 days without problems; plaintiff testified that she worked at Sam's Club part time.  (*Id.* at p. 23 ) (Tr. 613).  Plaintiff avers that the ALJ's reliance on the medical expert's unsubstantiated statements was error.  (*Id.* at p. 23).  Plaintiff argues it was also error for the ALJ to give Dr. Jonas' opinion

_____

[3] This employer is occasionally referred to as Costco.  (Dkt. 16, at p. 21).

significant weight over treating doctors' opinions because Dr. Jonas found three

consistent IQ scores to be invalid and "flippantly" dismissed a diagnosis of bipolar

disorder, stating, "It's massively over applied by all kinds of people, and if you tell

me that one person out of this whole mix diagnosed bipolar disorder, I'll point out

to you that all the rest of them did not.  And it's massively over applied. . . .  It has

no meaning."  (*Id.* at p. 24) (Tr. 724).

Plaintiff next argues that the RFC is inaccurate because the ALJ erroneously

gave Dr. Tripi's opinion little weight even though the opinion's functional

limitations conformed to the record as a whole, and the ALJ failed to explain why

Dr. Tripi's functional limitation opinions did not conform to the record.  (*Id.* at p.

33-34).  Instead, the ALJ only discussed Dr. Tripi's determination that plaintiff's

symptoms were disabling; thus, because the ALJ did not address the specific

functional limitations on which Dr. Tripi opined, and to which of those he gave the

"limited weight," the ALJ erred.  Further, because the ALJ relied on a perceived

"successful" job plaintiff held in 2004 to reject the opinion that plaintiff could not

now work, the ALJ's opinion is not supported by substantial evidence.  (*Id.* at p.

35).

    C.    <u>Commissioner's Motion for Summary Judgment</u>

In response to plaintiff's Step Three argument, the Commissioner notes as

an initial matter that the claimant bears the burden of proof at Step Three to do

more than point to evidence the ALJ could have relied on to raise a question as to whether the plaintiff satisfied a Listing.  (Dkt. 20 – Dft.'s Brief, at p. 4)  Rather, plaintiff must point to specific evidence that demonstrates she reasonably could meet or equal every requirement of the Listing.  (*Id.* at p. 5) (citing *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 Fed. Appx. 426, 432 (6th Cir. 2014).  The Commissioner acknowledges that plaintiff argues error only under Listing 12.04, paragraph "B," (*Id.* at p. 5), and points out that plaintiff referred to the wrong version of Listing 12.04 in her brief.  Specifically, she appears to be referring a version that took effect after the ALJ decision on August 10, 2016.  (*Id.* at p. 8).

The Commissioner argues that substantial evidence supports the ALJ's conclusion that plaintiff's impairments neither met nor equaled the severity of 12.04.  (*Id.*; Tr. 662).  The ALJ gave great weight to state agency reviewing psychologist Dr. Kriauciunas who found that plaintiff's impairments did not meet or equal a listing.  (*Id.* at p. 5-6; Tr. 515).  Although the ALJ did not discuss it, state agency reviewing psychologist Dr. Nordbrock came to the same conclusion.  (*Id.* at p. 6; Tr. 575) (citing *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001) ("court may look to any evidence in the record, regardless of whether it has been cited by the [ALJ].")).  The ALJ also gave great weight to Dr. Jonas's hearing testimony.  (*Id.* at p. 6).  Dr. Jonas reviewed the entire medical record and opined that plaintiff had no marked limitation for purposes of the paragraph B

criteria of the listing.  (*Id.*; Tr. 703-04, 714).  As the ALJ noted, "Dr. Jonas is a medical expert in the field of psychiatry with experience reviewing Social Security applications, making him well versed in the application of Social Security rules and regulations."  (*Id.*; Tr. 664).  Drs. Kriauciunas and Nordbrock are also experts in Social Security disability evaluation.  (*Id.*) (citing 20 C.F.R. §§ 404.1527(e)(2)(i) & 416.927(e)(2)(i)).  The Commissioner notes that the Sixth Circuit has recognized such expert opinion evidence amounts to substantial evidence to support the ALJ's conclusions.  (*Id.* at p. 7) (citing *Helm v. Comm'r of Soc. Sec.*, 405 Fed. Appx. 997, 1002 (6th Cir. 2011).  Plaintiff does not advance a medical opinion indicating that Listing 12.04 was met or equaled.  (*Id.* at p. 8).

According to the Commissioner, plaintiff's assertion that the ALJ engaged in "cherry picking" should be rejected.  (*Id.* at p. 9) (citing *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014) (an allegation of "'cherry picking' … is seldom successful because crediting it would require a court to re-weigh record evidence").  That accusation is particularly unavailing, posits the Commissioner, in light of the ALJ's reliance on Dr. Jonas's hearing testimony, wherein he offered an opinion as to the paragraph "B" criteria based on a review of the entire medical record.  (*Id.* at p. 9; Tr. 686, 716, 720).

The Commissioner contends that there is no error in the ALJ's analysis of Dr. Jonas's opinion.  (*Id.* at p. 9).  Plaintiff fails to show that Dr. Jonas

unreasonably relied in part on her 90 days of work as a cashier at Sam's Club.  (*Id.* at p. 10).  Plaintiff bears the burden at Step Three.  Therefore, her acknowledged lack of evidence that she had any problem at Sam's Club before being fired for stealing a customer's credit card (Tr. 613, 696, 709-10) does not upset Dr. Jonas's analysis or the ALJ's reliance on it.  (*Id.* at p. 10).

Dr. Jonas's testimony that bipolar disorder is over-applied and that the three IQ scores did not reflect her true abilities has no bearing on whether her impairments meet or equal Listing 12.04.  (*Id.* at 11).  Plaintiff's argument is, according to the Commissioner, that Dr. Jonas generally cannot be accepted as an expert in psychiatry, and that argument is waived because she did not raise such an objection before the ALJ.  (*Id.* at p. 11) (citing Tr. 688-746).  Dr. Jonas's extensive credentials establish that a reasonable mind can rely on him as an expert in psychiatry (*Id.* at p. 11) (citing Tr. 1110-12).

Furthermore, because the ALJ acknowledged Dr. Zerba's report, including her diagnoses and GAF assessment, plaintiff's argument that the ALJ did not flesh out Dr. Zerba's report is unavailing.  (*Id.* at p. 12).  The Commissioner contends that a diagnosis alone says nothing about the severity of the condition and that GAF scores do not have a direct correlation to the severity of the condition.  (*Id.*).

In response to plaintiff's RFC argument, the Commissioner asserts that the ALJ's RFC decision is supported by substantial evidence.  Dr. Kriaucuinas, whose

opinion was given great weight, stated that plaintiff was capable of doing unskilled work on a sustained basis.  (*Id.* at 13; Tr. 531).  The ALJ noted that Dr. Jonas "did not believe the claimant had more than moderate deficits in any of the functional domains."  (*Id.*; Tr. 671).  Plaintiff does not challenge much of the non-opinion medical evidence on which the ALJ relied.  (*Id.*; Tr. 666-71).  This evidence provides substantial support for the ALJ's RFC determination.  (*Id.* at p. 13).

The Commissioner contends that plaintiff's claim of error that the ALJ did not give good reasons for discounting Dr. Tripi's opinion is unavailing.  (*Id.* at p. 14).  Dr. Tripi was not a treating source and as such the ALJ was not required to give reasons for discounting Dr. Tripi's opinion.  (*Id.*) (citing *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875-76 (6th Cir. 2007)).  Should the Court disagree, the Commissioner argues that the ALJ did not err in failing to evaluate Dr. Tripi's opinion because during periods of sobriety she has been able to generally maintain her activities of daily living, and concentrate.  (*Id.* at p. 14, n. 9).  Furthermore, plaintiff has not developed a legally cognizable argument here, pointing to Dr. Yoon's opinion that she would miss more than four days of work per month.  (*Id.*).

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely

reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc.*

*Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").  "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'"  *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion."  *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers*, 486

F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard

presupposes that there is a 'zone of choice' within which the Commissioner may

proceed without interference from the courts."  *Felisky v. Bowen*, 35 F.3d 1027,

1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record

only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir.

2001).  When reviewing the Commissioner's factual findings for substantial

evidence, a reviewing court must consider the evidence in the record as a whole,

including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of*

*Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of

appeals and the district court may look to any evidence in the record, regardless of

whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*,

245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either

the ALJ or the reviewing court must discuss every piece of evidence in the

administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508

(6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly

addressing in his written decision every piece of evidence submitted by a party.")

(internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*,

198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.      Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits."

*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);

*accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003).

There are several benefits programs under the Act, including the Disability

Insurance Benefits Program of Title II (42 U.S.C. §§ 401 *et seq*.) and the

Supplemental Security Income Program of Title XVI (42 U.S.C. §§ 1381 *et seq*.).

Title II benefits are available to qualifying wage earners who become disabled

prior to the expiration of their insured status; Title XVI benefits are available to

poverty stricken adults and children who become disabled.  F. Bloch, Federal

Disability Law and Practice § 1.1 (1984).  While the two programs have different

eligibility requirements, "DIB and SSI are available only for those who have a

'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  "Disability"

means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.      Analysis and Conclusions

1.      Listing 12.04

Plaintiff claims that the ALJ erred in failing to find that her impairments met

or medically equaled Listing 12.04[4] (Affective Disorder).  However, substantial

evidence supports the ALJ's determination that plaintiff does not meet the

paragraph "B" criteria.  Therefore, there is no reason to disturb the ALJ's decision

in this regard.

At step three of the disability evaluation process, the Commissioner must

consider whether a claimant's impairments meet or medically equal any of the

relevant listing requirements of 20 C.F.R. Part 404, Subpart P, App. 1.  20 C.F.R.

§ 404.1520(a).  An impairment that meets only some of the medical criteria, but

not all does not qualify, despite its severity.  *See Sullivan v. Zebley*, 493 U.S. 521,

530 (1990).  Conversely, a claimant who meets the requirements of a listed

impairment will be deemed conclusively disabled, and entitled to benefits.  *See*

*Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *Berry v. Comm'r*

*of Soc. Sec.*, 34 Fed. Appx. 202, 203 (6th Cir. 2002).  The burden of proof for

establishing that an impairment meets or equals the requirements of a listed

impairment rests with the claimant.  *See Foster v. Halter*, 279 F.3d 348, 354 (6th

---

[4] Plaintiff relied on the incorrect version of Listing 12.04 in her brief.  The version applicable at the time of the hearing (August 10, 2016) is reflected below.

Cir. 2001).  An impairment or combination of impairments is considered medically

equivalent to a listed impairment ". . . if the symptoms, signs and laboratory

findings as shown in medical evidence are at least equal in severity and duration to

the listed impairments."  *See Land v. Sec'y of Health & Human Servs.*, 814 F.2d

241, 245 (6th Cir. 1986) (per curiam).

In order to meet Listing 12.04, plaintiff must show that she satisfies the

criteria in both Paragraphs A and B of the listing.  20 C.F.R. Pt. 404, Subpt. P,

App. 1 §§ 12.04.  The "A" criteria consist of clinical findings which medically

substantiate a mental disorder.  To satisfy the "B" requirements of Listing 12.04,

plaintiff must establish <u>at least two</u> of the following limitations: (1) marked

restriction of activities of daily living; (2) marked difficulties in maintaining social

functioning; (3) marked difficulties in maintaining concentration, persistence, or

pace; or (4) repeated episodes of decompensation, each of extended

duration.  *Id.*  Alternatively, under Listing 12.04, a claimant may satisfy the

requirements of a listed mental impairment if s/he has a medically substantiated

mental impairment and functional limitations that meet the "C" criteria of the

listing.  The "C" criteria for Listing 12.04 require a medically documented history

of a mental impairment and one of the following: (1) repeated episodes of

decompensation, each of extended duration; (2) a residual disease that has resulted

in such marginal adjustment that even minimal increase in mental demands or

change in the environment would be predicted to cause the individual to

decompensate; or (3) a current history of 1 or more years' inability to function

outside a highly supportive living arrangement with a need for such an

arrangement to continue.  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04.

Here, the ALJ stated that "[t]he severity of the claimant's mental

impairments, considered singly and in combination, do not meet or medically equal

the criteria of listings 12.04, 12.05, 12.06, 12.08, and 12.09."  (Tr. 662).  Plaintiff

argues error only as to Listing 12.04, paragraph "B."  The ALJ stated that in

making his decision he considered whether "paragraph B" and "C" criteria were

satisfied.  (Tr. 662-63).  After discussing the paragraph "B" criteria, the ALJ

determined that they were not satisfied because plaintiff had mild deficits in

activities of daily living, moderate limitations in social functioning, mild

concentration, persistence, and pace limitations, and there was no evidence that

plaintiff suffered any episodes of decompensation of extended duration.  (Tr. 662).

a.     Activities of Daily Living

The ALJ's determination that plaintiff does not have marked limitation in

activities of daily living is supported by substantial evidence.  In discussing

plaintiff's activities of daily living ("ADLs"), the ALJ noted that plaintiff struggled

to maintain her ADLs and care for her children who were removed from her care.

(Tr. 662).  The ALJ further observed, however, that in 2015, plaintiff endorsed the

ability to perform household chores such as cleaning, shopping, cooking, doing appropriate personal care and grooming independently, and denied problems with activities of daily living.  (Tr. 662, 668, 669; Tr. 1049).  Given plaintiff's denial of problems with activities of daily living, it is understandable how the ALJ came to his conclusion that plaintiff did not have marked limitation in that area.  Further, while plaintiff cites the loss of her parental rights as evidence of marked limitation in ADLs, she has not adduced any authority for the proposition that such a circumstance equates to marked limitations.  Moreover, as discussed, the ALJ considered this evidence along with the other evidence discussed herein.  Indeed, substantial evidence in the record supports the ALJ's determination that plaintiff does not have marked limitation in activities of daily living.  For instance, state Agency Reviewing psychologist, Dr. Nordbrock concluded that plaintiff suffered only mild limitations in ADLs, and as noted by the Commissioner, opined that she did not meet the Listing.  Further, she reported to state examining psychologist Dr. Terrance Mills that she had no problems with ADLs.  And, Dr. Dosyng Yoon, at Family Medical Resources rated her as moderately limited in ADLs.  (*See* Tr. 583, 1049, 1115).  Because substantial evidence supports less than marked limitation in ADLs and because plaintiff stated in 2015 that she did not have problems with ADLs, the undersigned finds no reason to upset the ALJ's determination on this criterion.

Plaintiff's argument that the ALJ cherry-picked evidence in order to support his decision that she had only mild restriction in ADLs is unpersuasive. "It is well-settled law in the Sixth Circuit that an ALJ is not required to address every piece of evidence in the record." *Phillips v. Berryhill*, 2017 WL 6045451, at *5 (W.D. Ky. Dec. 6, 2017) (quoting *Conner v. Comm'r of Soc. Sec.*, 658 Fed. Appx. 248, 254 (6th Cir. 2016)); *see also Smith v. Comm'r of Soc. Sec.*, 2015 WL 7460080, at *3 (W.D. Mich. Nov. 24, 2015) ("The argument that the ALJ mischaracterized or 'cherry-picked' the record is frequently made and seldom successful"). Cherry-picking arguments are seldom successful because "crediting [them] would require a court to re-weigh the record evidence." *DeLong v. Comm'r of Soc. Sec. Admin.*, 748 F. 3d 723, 726 (6th Cir. 2014). "If a District Court was to re-weigh the record evidence, it would be acting outside the narrow scope of its judicial reviewing authority." *Phillips*, 2017 WL 6045451, at *5 (citing *Smith*, 2015 WL 7460080, at *3). Here, there is no indication that the ALJ "cherry-picked" evidence. The ALJ did not address every piece of medical evidence suggesting less than marked limitation in this area, but he was not required to. *See Phillips*, 2017 WL 6045451, at *5. The undersigned thus finds no error in the ALJ's discussion of activities of daily living.

b.      Concentration, Persistence, or Pace

Plaintiff states that she has memory problems, as evidenced by her apparent difficulty to accurately relate her work history to medical professionals.  (Dkt. 16, at p. 21).  The only medical opinions plaintiff points to are her Working Memory test scores indicating "extremely low" in April and May 2016.  (Tr. 1089, 1103).  As explained above, plaintiff has the burden at Step Three of the sequential analysis of putting forth evidence establishing that she meets or equals a listing.  It is therefore incumbent on plaintiff to present medical evidence establishing that she meets all of the requirements of Listings 12.04 to meet his burden.  *See Sullivan*, 493 U.S. at 530-32.  Whether or not plaintiff's "extremely low" working memory scores present some evidence that plaintiff meets this criterion, the undersigned notes that, notwithstanding these scores, substantial evidence in the record that the ALJ relied on supports his decision, as discussed more fully below.

Concentration, persistence or pace is the "ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks found in work settings."  20 C.F.R. Pt. 404, Subpt. P, Appendix 1, § 12.00(C)(3).  The ALJ pointed to a December 2015 consultative examination in which plaintiff was able to repeat six of six digits forward and four of six digits backward, demonstrating her memory and focus.  (Tr. 663; Tr. 1050).  In October 2006, Dr. Zerba noted that plaintiff was able to repeat five digits forward and three

digits backward, recalled two of three objects three minutes later, named two of the past few presidents, and recalled her birthday. (Tr. 512). In April 2016, Dr. Tripi noted that plaintiff has moderate difficulty in her ability to remember locations and work-like procedures and to understand and remember very short and simple instructions, and marked difficulty in her ability to understand and remember detailed instructions. (Tr. 1093). This assessment is not inconsistent with the conclusion that plaintiff has only moderate limitation in concentration, persistence, and pace. *See Smith v. Comm'r of Soc. Sec.*, 2017 WL 264498, at *6 (E.D. Mich. Jan. 20, 2017) (quoting 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing § 12.00) ("You may be able to sustain attention and persist at simple tasks but may still have difficulty with complicated tasks. Deficiencies that are apparent only in performing complex procedures or tasks would not satisfy the intent of this paragraph B criterion."). In addition, state agency psychologists Drs. Kriauciunas and Nordbrock both indicated that plaintiff's impairments did not meet Listing 12.04. (Tr. 525, 583); *see also Maust v. Colvin*, 2014 WL 4852064, at *7 (N.D. Ohio Sept. 29, 2014) (indicating that an ALJ's decision may be supported by substantial evidence where consistent with the opinion of a state agency's evaluating psychological consultant, which is in turn consistent with the record) (collecting cases). Thus, the medical evidence in the record provides substantial evidence to support the ALJ's determination here.

Plaintiff lists transcript citations noting problems with concentration in support of the contention that she has more than moderate limitation in concentration, persistence, and pace. (Dkt. 16, at p. 24) (listing Tr. 237, 305, 313, 320, 436, 525, 529, 536, 586, 591-593, 618, 623, 1069, 1077, 1093-1095, 1115). She does not explain how the evidence on these pages shows marked difficulty in concentration. In reviewing plaintiff's listed citations, it is clear that much of it does not indicate that she has marked difficulty in concentration. Some are not medical opinions at all, (Tr. 237 is her self-reported function report, Tr. 313 is third-party function report filled out by her friend, and Tr. 320 is her self-reported August 2010 function report), some are simply a note of plaintiff's complaints of impaired concentration, (Tr. 436, 536, 1069, 1077), *see* 20 C.F.R. § 404.1529 ("[W]e will not substitute your allegations of pain or other symptoms for a missing or deficient sign or laboratory finding to raise the severity of your impairment(s) to that of a listed impairment."), and others contain notes that plaintiff has moderate difficulty in concentration or that she has memory problems, (Tr. 525, 529, 586, 591-93, 618, 623, 1115, 1093-95). These records do not indicate that plaintiff has marked limitation in concentration, persistence, or pace.

Because the ALJ reached his decision using correct legal standards and because those findings were supported by substantial evidence, the Court must affirm it, even if reasonable minds could disagree on whether the individual was

disabled or substantial evidence could also support a contrary result. *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *see also Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) ("If substantial evidence supports the Commissioner's decision, this Court will defer to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion.").  As noted earlier, the substantial evidence standard presupposes that "there is a zone of choice within which the [ALJ] may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (internal citations omitted).  This "zone of choice" includes resolving conflicts in the evidence and deciding questions of credibility. *Gaffney v. Bowen*, 825 F.2d 98, 100 (6th Cir. 1987).  The undersigned concludes that the ALJ's findings here are within that "zone of choice" and thus supported by substantial evidence.

In light of the foregoing, substantial evidence exists to supports the ALJ's decision that plaintiff does not have at least two "marked" limitations under the paragraph "B" criteria, and she thus has not fulfilled her burden of showing that she meets or medically equals Listing 12.04.[5]  However, for the sake of completeness, the undersigned will address the social functioning criterion.

---

[5] As the ALJ explained, there is no medical evidence showing any period of decompensation, and plaintiff does not argue otherwise.  (Tr. 663).  Plaintiff does meet the fourth paragraph "B" criterion.

c.      Social Functioning

A review of the record indicates that substantial evidence also supports the ALJ's determination that plaintiff does not have marked limitations in social functioning.  The ALJ acknowledged plaintiff's difficulties in this area, such as not engaging in social activities, committing credit card fraud, and appearing evasive with poor eye contact in a consultative examination in May 2016.  (Tr. 662).  However, Dr. Jonas pointed out that plaintiff was able to work without noted difficulty in a "fairly high pressured environment" as a Sam's Club cashier with frequent public interaction.  (*Id.*).  As the ALJ stated, plaintiff's ability to work at Sam's Club confirms no more than moderate difficulty in social functioning.  (*Id.*).  Substantial evidence also exists in the record to support the ALJ's conclusion here.  In 2016 Dr. Yoon indicated that plaintiff had marked limitations in social functioning and that plaintiff would miss work more than four days per month.  However, the ALJ gave this opinion little weight because plaintiff worked with the general public despite allegations of anxiety, her panic attacks last only five minutes and are reduced by breathing to calm herself down.  Moreover, Dr. Yoon indicated that lack of a vehicle and unstable housing – i.e. non-medically based factors – were amongst the reasons she would have difficulty working on a sustained basis.  (Tr. 670).  Plaintiff does not challenge this weight determination.  Further, Dr. Kriasciunas's October 2006 12.04 paragraph "B" criteria assessment

28

indicated that plaintiff had only moderate limitations in social functioning.  (Tr.

525).  In July 2011, Dr. Nordbrock's paragraph "B" assessment noted only mild

limitation in social functioning.  (Tr. 583).  In Dr. Mills's December 2015 report,

he noted that plaintiff was moderately limited in her ability to appropriately

interact with the general public or respond to supervision.  (Tr. 1051, 1053).  The

ALJ's determination that plaintiff has only a moderate limitation in social

functioning is thus supported by substantial evidence.  The undersigned finds no

basis to disturb the ALJ's Listing 12.04 determination.  As explained above, the

undersigned may not reverse the ALJ's decision merely because it disagrees or

because "there exists in the record substantial evidence to support a different

conclusion."  *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir.

2006).  Moreover, as previously noted, it is plaintiff's burden to point to specific

evidence that demonstrates she meets or equals every requirement of the Listing.

*Wein v. Comm'r of Soc. Sec.*, 2017 WL 4211048, at *9 (E.D. Mich. Aug. 7, 2017)

(quoting *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 Fed. Appx. 426, 432 (6th Cir.

2014) (internal quotation marks omitted).  Plaintiff has not met her burden.

Plaintiff's arguments that the ALJ should not have relied on Dr. Jonas's

opinion and should have more fully analyzed Dr. Zerba's opinion are not aimed at

demonstrating that she meets or equals 12.04 and are unavailing.  Plaintiff claims it

was error for the ALJ to rely on Dr. Jonas's opinion for two reasons: first, that Dr.

Jonas relied on non-existent work history and because Dr. Jonas "flippantly" dismissed a valid diagnosis of bipolar disorder and IQ scores in determining that she does not meet or equal a Listing.  As to her first claim of error, plaintiff argues that there is no evidence that she has the ability to work in a fairly high-pressured environment as demonstrated by her 90-day job as a Sam's Club cashier without any noted difficulty, and with frequent public interaction because there is no record of how she performed in that job.  (Dkt. 16, at p. 23).  Other than plaintiff's charge of credit card fraud from stealing a Sam's Club customer's credit card, there is no record of her performance.  (Tr. 662).  Yet, because there is no record of her performance in interacting with the public, it is not inaccurate to say there is no *noted* difficulty with frequent public interaction during her employment.  (Tr. 662). Additionally, the ALJ asked plaintiff whether there were any complaints about her work performance at Sam's Club, and plaintiff did not directly reply.  (Tr. 710). Further, it was not error for Dr. Jonas to rely on plaintiff's ability to work for two-and-a-half years because she indicated the same to Dr. Tripi in April 2016, and so this fact is, in fact, "borne out" in the record.  (Tr. 1088).

Regarding what plaintiff characterized as Dr. Jonas's "flippant" dismissal of medical evidence, plaintiff states:

> For this medical expert to flippantly dismiss a valid diagnosis, given by more than one treater and/or examiner, reflects apparent arrogance, when also combined with his rejection of three psychologist's

30

> testing results regarding IQ scores that are all consistent
> with one another (FS IQ 66, 68, 65).  It was then also
> error for the ALJ to accept this doctor's opinions (a non-
> examining physician) over examining and treating
> doctors' opinions.

(Dkt. 16, at p. 24).  It appears then that plaintiff's argument is that because Dr.

Jonas was "arrogant" the ALJ should not have accorded his opinion more weight

than examining and treating physicians.  Plaintiff does not point to which

examining or treating physicians she believes should have been given more weight

than Dr. Jonas, nor does she provide argument beyond that highlighted above.

"[I]ssues adverted to in perfunctory manner, unaccompanied by some effort at

developed argumentation, are deemed waived.  It is not sufficient for a party to

mention a possible argument in the most skeletal way, leaving the court to ... put

flesh on its bones."  *McPherson v. Kelsey,* 125 F.3d 989, 995–96 (6th Cir. 1997)

(citations omitted); *see also Marko v. Comm'r of Soc. Sec.*, 2017 WL 3116246, at

*3 (E.D. Mich. July 21, 2017) (citing *Jones v. Comm'r of Soc. Sec.*, 2013 WL

4748083, at *8 (N.D. Ohio Sept. 4, 2013) ("[I]t is not the Court's function to search

the administrative record for evidence to support [Plaintiff's] 'argument' or find

law supporting [his or] her claims.  This Court does not conduct a *de novo* review

in social security proceedings, and certainly cannot be expected to craft an

argument on [Plaintiff's] behalf.")).  Even if Dr. Jonas erred in reciting some of the

facts upon which he relied, it is not fatal to the ALJ's conclusion on social

functioning because there is substantial evidence beyond Dr. Jonas' opinion supporting the ALJ's holding.

Plaintiff generally attacks the ALJ's crediting of Dr. Jonas's opinion over that of treating physicians.  However, plaintiff does not identify a specific treating physician.  On this record, the only arguably treating physicians appear to be at Community Network Services, and Dr. Yoon of Community Network Services is the only physician who has an opinion that conflicts with Dr. Jonas on social functioning: that plaintiff has marked limitations in social functioning.  (Tr. 1115).  A treating physician is a medical source who provided the claimant with medical treatment or evaluation and who has, or has had, "an ongoing treatment relationship with you."  20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2); *Kornecky v. Comm'r of Soc. Sec*., 167 F. Appx. 496, 507 (6th Cir. 2006) ("[A] plethora of decisions unanimously hold that a single visit does not constitute an ongoing treatment relationship. . . .  Indeed, depending on the circumstances and the nature of the alleged condition, two or three visits often will not suffice for an ongoing treatment relationship.").

The opinion of a treating physician should be given controlling weight if it is:  (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) "not inconsistent with the other substantial evidence in [the] case record."  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004);

20 C.F.R. § 404.1527(d)(2).  The Commissioner is required to provide "good

reasons" for discounting the weight given to a treating-source opinion.  These

reasons must be supported by the evidence in the case record, and must be

sufficiently specific to make clear to any subsequent reviewers the weight the

adjudicator gave to the treating source's medical opinion and the reasons for that

weight.  *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013).

Once an ALJ has determined that a treating source opinion is not entitled to

controlling weight, the ALJ must apply specific factors to resolve the question of

what weight will be assessed.  Those factors include, (1) the length of the treatment

relationship and frequency of examination, (2) the nature and extent of the

treatment relationship, (3) supportability of the opinion, (4) consistency of the

opinion with the record as a whole, and (5) the specialization of the treating source.

*Id.; see also Wilson,* 378 F.3d at 544.  Failure to analyze a treating source opinion

under the two-prong controlling weight test amounts to the failure to provide good

reasons for giving that opinion less than controlling weight.  *Gayheart* at 376-77.

"Violation of the rule constitutes harmless error if the ALJ has met the goals

of the procedural requirement—to ensure adequacy of review and to permit the

claimant to understand the disposition of his case—even though he failed to

comply with the regulation's terms."  *Coldiron v. Comm'r of Soc. Sec.*, 391 Fed.

Appx. 435, 440 (6th Cir. 2010) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d

541, 547 (6th Cir. 2004).  An ALJ may meet those goals by indirectly attacking the

supportability of the treating physician's opinion or its consistency with other

evidence in the record.  *See Nelson v. Comm'r of Soc. Sec.*, 195 Fed. Appx. 462,

470-72 (6th Cir. 2006) (no error in ALJ's failure to explain weight given to two

treating physicians or failure to give good reasons for discounting them where ALJ

thoroughly explained other medical evidence that indirectly attacked the

consistency of the treating physicians' opinions).  In *Coldiron*, the court held that

even if the ALJ's stated reasons for rejecting a physician's opinion were not "good

reasons," the ALJ sufficiently indirectly attacked the supportability and

consistency of the opinion such that any error was harmless.  391 Fed. Appx. at

440-41.  The ALJ indirectly attacked the consistency of the opinion that the

plaintiff could not lift or carry any weight at all when the ALJ explained that the

state agency physicians found that the plaintiff lacked a "diminished capacity for

lifting/carrying."  And although the physician stated that plaintiff could walk for

only twenty minutes in an eight-hour workday and his ability to sit was limited,

other medical evidence showed he could stand and sit for six hours out of eight.

*Id.* at 441.  The plaintiff's own statements also undermined the doctor's opinion.

*Id.*

While Dr. Yoon likely qualifies as a treating physician,[6] any error in

evaluating his opinion was harmless under *Wilson*, *supra*, because the ALJ met the

goals of the treating physician rule in his discussion on the supportability of Dr.

Yoon's opinion on social functioning that conflicts with Dr. Jonas's opinion.  The

ALJ stated,

> Dr. Yoon also opined that the claimant experienced
> "marked" difficulties in maintaining social functioning;
> however, I give this opinion little weight (Exhibit 37F,
> page 3) and I give Dr. Jonas' opinion that this level of
> functioning is "moderate".  The claimant worked with the
> general public, despite allegations of anxiety.  She has
> reported panic attacks last only five minutes and that the
> prescribed medications alleviate her anxiety symptoms to
> some degree.  To reduce panic attack symptoms, the
> claimant testified she breathes and calms down.
> Moreover, Dr. Yoon opined the claimant would be absent
> more than four days per month (Exhibit 37F, page 4).
> However, I give this opinion limited weight, as Dr. Yoon
> cited factors such as lack of vehicle and unstable housing
> as reasons why the claimant would have difficulty
> working at a regular job on a sustained basis, which are
> not medical bases for absenteeism *(Id.)*.

(Tr. 670).  The ALJ's statement here points to plaintiff's activities and symptom

duration which undermine the supportability of Dr. Yoon's opinion.  Additionally,

the ALJ notes the relative effectiveness of treatment (prescribed medications) for

one of the main symptoms (anxiety) relevant to social functioning; and points to

---

[6] In June 2016 Dr. Yoon indicated that his (or at least Community Services Network) length of contact with plaintiff included the following: April 6, 2010 through February 23, 2011; April 6, 2011 through April 23, 2013; and November 16, 2015 through "current."  (Tr. 1113).

evidence of the coping mechanism she employs for social engagement as further proof of her social functioning.  Consequently, any error in evaluating Dr. Yoon's opinion is harmless because, as in *Coldiron*, the ALJ explained that Dr. Yoon's opinion was not supported by other record evidence showing less than marked limitation in social functioning based on the evidence the ALJ cited here and the evidence discussed above.

The ALJ did not err in weighing Dr. Jonas's opinion.  Dr. Jonas is a non-treating, non-examining psychologist who reviewed the entire record before testifying at the hearing in August 2016.  (Tr. 662).  Non-treating sources are not examined for controlling weight.  *See* 20 C.F.R. § 4040.1527(c)(2).  Every medical opinion, even one from a non-treating, non-examining source, is to be evaluated considering the following factors: examining relationship, treatment relationship, supportability, consistency, and specialization.  20 C.F.R. § 404.1527(c); *see also Gayheart*, 710 F.3d at 376 (Other factors "which tend to support or contradict the opinion" may be considered in assessing any type of medical opinion.  [20 C.F.R..] § 404.1527(c)(6).").

The ALJ sufficiently explained why he gave Dr. Jonas's opinion significant weight.  The ALJ noted that Dr. Jonas is a specialist in psychiatry:  "Dr. Jonas is a medical expert in the field of psychiatry with experience reviewing Social Security applications, making him well versed in the application of Social Security rules

and regulations.  Most importantly, however, the clinical evidence supports his determination." (Tr. 664).  Though plaintiff's challenge focuses on meeting Listing 12.04, she takes issue with the ALJ's treatment of the intelligence testing, which was primarily discussed in the context of Listing 12.05.  On plaintiff's intelligence testing, the ALJ noted that Dr. Jonas supported his conclusion that plaintiff does meet or equal Listing 12.05(c) because she admitted she would know the amount of change to expect if she bought something with a twenty-dollar bill and she confirmed that she attended regular classes while obtaining passing grades in school.  (*Id.*).  Further, she worked at Sam's Club, a semi-skilled job with frequent public interaction.  (*Id.*).  According to Dr. Jonas, these examples show higher intellectual functioning than her intelligence test scores would suggest.  (*Id.*).  Moreover, the ALJ found the fact that "three evaluating sources, who administered intelligence testing, failed to commit to a 12.05 diagnosis" buttressed Dr. Jonas' opinion.  (*Id.*)  Plaintiff's Wide Range Achievement Test-4 scored revealed reading, spelling and arithmetic levels that belied her low intelligence scores.  (*Id.*).  And, Dr. VanHorn, Dr. Tripi and Dr. Makie all questioned the validity of the WAIS scores.  (*Id.* at 663-664).  Because the ALJ sufficiently explained his reason for giving Dr. Jonas's opinion significant weight, the undersigned finds no basis to disturb the ALJ's determination here.

Finally, plaintiff claims error in the ALJ's failure to "flesh out" Dr. Zerba's diagnoses of major depressive disorder and panic disorder without agoraphobia, with a GAF score of 49. According to plaintiff these diagnoses signify the seriousness of her mental impairments. (Dkt. 16, at p. 19). The undersigned notes that Dr. Zerba did indeed provide these diagnoses, but Dr. Zerba does not comment further. (Tr. 512). It is unclear what plaintiff believes the ALJ should have "fleshed out." Dr. Zerba did not indicate that the paragraph B criteria were satisfied, and plaintiff does not explain how anything in the report shows that she satisfied the requirements of Listing 12.04. Again, plaintiff has the burden at Step Three of putting forth evidence establishing that she meets or equals a listing. It is therefore incumbent on plaintiff to present medical evidence establishing that she meets all of the requirements of Listings 12.04 to meet her burden. *See Sullivan*, 493 U.S. at 530-32. Moreover, "issues adverted to in perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson,* 125 F.3d at 995–96 (citations omitted).

To the extent plaintiff is claiming that Dr. Zerba's GAF score of 49 supports a finding that plaintiff has met or medically equaled Listing 12.04, the argument is unavailing. Plaintiff cites no authority for this proposition and overstates the

significance of GAF scores.  "A GAF score may help an ALJ assess mental RFC, but it is not raw medical data.  Rather, it allows a mental health professional to turn medical signs and symptoms into a general assessment, understandable by a lay person, of an individual's mental functioning."  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 502 n.7 (6th Cir. 2006).  Moreover, GAF assessments are "isolated to a relatively brief period of time, rather than being significantly probative of a person's ability to perform mental work activities on a full-time basis."  *White v. Colvin*, 2014 WL 2813310, at *10 (S.D. Ohio, June 23, 2014) (adopted by 2014 WL 3510298 (S.D. Ohio July 14, 2014)).  The undersigned thus finds no error in the ALJ's treatment of Dr. Zerba's medical opinion.

### 2.      RFC and Consideration of the Medical Evidence

Plaintiff claims that the RFC is inaccurate because the ALJ gave Dr. Tripi's opinion little weight without discussing how her residual functional capacity opinion did not conform to the record and that the ALJ erroneously perceived a successful job in 2004 to mean that plaintiff can work.  (Dkt. 16, at p. 33-34).  The Commissioner contends that the RFC is supported by substantial evidence and that the ALJ did not need to give good reasons for discounting Dr. Tripi's opinion because she was not a treating source.  (Dkt. 20, at p. 13-14).  However, the ALJ did err in failing to consider Dr. Tripi's RFC opinion, warranting remand.

The undersigned agrees with the Commissioner that Dr. Tripi is a nontreating source. *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007) ("A 'nontreating source' (but examining source) has examined the claimant 'but does not have, or did not have, an ongoing treatment relationship with' her.") (quoting 20 C.F.R. § 404.1502). Dr. Tripi evaluated plaintiff on April 8, 2016 and on May 2, 2016, Dr. Tripi submitted a drug and alcohol questionnaire. (Tr. 1088-98). It is well-settled in this Circuit that these types of minimal visits do not establish the requisite longitudinal relationship. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 507 (6th Cir. 2006) ("[A] plethora of decisions unanimously hold that a single visit does not constitute an ongoing treatment relationship.... Indeed, depending on the circumstances and the nature of the alleged condition, two or three visits often will not suffice for an ongoing treatment relationship."); *Willis v. Comm'r of Soc. Sec.,* No. 12-10011, 2012 WL 7608133, *9 (E.D. Mich. Oct., 29, 2012) (treating relationship was not established after plaintiff saw physician only two times before opinion was issued); *Helm v. Comm'r of Soc. Sec.*, 405 Fed. Appx. 997, 1000 n.3 (6th Cir. 2011) ("[I]t is questionable whether a physician who examines a patient only three times over a four-month period is a treating source—as opposed to a nontreating (but examining) source."). Here, plaintiff's single visit with Dr. Tripi and Dr. Tripi's

subsequent drug and alcohol questionnaire do not result in an opinion entitled to treating-source deference as a longitudinal relationship was not established.

As a nontreating source, "the ALJ is not required to give "good reasons" for rejecting a nontreating source's opinions in the same way as must be done for a treating source." *Chandler v. Comm'r of Soc. Sec.*, 2014 WL 2988433, at *8 (S.D. Ohio July 1, 2014). "Instead, for nontreating sources, the Commissioner weighs these opinions based on a number of factors including: the examining relationship (or lack thereof), specialization, consistency, and supportability. *Jackson v. Comm'r of Soc. Sec.*, 2015 WL 5634671, at *8 (S.D. Ohio Sept. 25, 2015) (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)). "[T]he ALJ's failure to explain the weight given to the opinion of even a treating physician will be a harmless error if the RFC she adopts incorporates the limitations indicated in the . . . physician's opinion." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

Plaintiff is correct that the ALJ did not discuss Dr. Tripi's mental residual functional capacity opinion (Tr. 1092) or explain what weight was given to that particular opinion, although he did discuss Dr. Tripi's administration of the WAIS-IV intelligence testing and her responses to the drug and alcohol questionnaire.[7]

---

[7] The ALJ acknowledged plaintiff's evaluation with Dr. Tripi in April 2016. The ALJ noted that plaintiff performed poorly on intelligence testing and that Dr. Tripi opined that she would not be capable of sustaining substantial gainful activity. (Tr. 668). The ALJ stated that whether an individual is "disabled" is an issue reserved to the Commissioner (SSR 96-5p). (*Id.*). Next, the ALJ stated, "For the reasons discussed above, in particular Dr. Jonas' explanation as to why he concluded the claimant did not satisfy the requirements of Listing Section 12.05, I assign

(Tr. 664, 668-69).  Such an error requires remand.  Dr. Tripi's RFC opinion appears to be at odds with the assessed RFC, although some portions of the opinion are accounted for in the RFC.  For example, Dr. Tripi indicated that plaintiff would have extreme limitations (i.e. the ability to function in this area would be limited the majority of the time) in the "ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances," the "ability to tolerate normal levels of stress," and the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods," and marked limitation (i.e. the ability to function would be limited about 50% of the time) in the "ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness," and in the "ability to sustain an ordinary routine without special supervision."   (Tr. 1093-95). There is no discussion by the ALJ of these limitations.  At minimum, it is not clear whether the RFC accounts for these limitations.

The regulations provide that the ALJ will evaluate every medical opinion received.  20 C.F.R. § 404.1527(c).  Further, "[t]he RFC assessment must always consider and address medical source opinions.  If the RFC assessment conflicts

---

Dr. Tripi's opinion limited weight.  (Tr. 668-69).  Still, nowhere in the decision did the ALJ discuss Tripi's mental RFC assessment.  It is thus not clear which portions of Tripi's opinion the ALJ gave limited weight or whether he considered the entirety of the opinion at all.

with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."  SSR 96-8P, 1996 WL 374184, at *7 (July 2, 1996).  Although the ALJ was not required to give "good reasons" for the weight assigned to it, "the ALJ's decision still must say enough to allow the appellate court to trace the path of his reasoning."  *Stacey v. Comm'r of Soc. Sec.*, 451 Fed. Appx. 517, 519 (6th Cir. 2011) (internal quotation marks omitted).  The ALJ's decision has not met that standard because it neither assigned weight to nor discussed Dr. Tripi's RFC opinion, and Dr. Tripi's opinion is not consistent with the assessed RFC.  *See Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1054 (6th Cir. 1983) (the Commissioner may not disregard opinions of a consulting physician which are favorable to a claimant).  This is reversible error.  *Cf. Heston*, 245 F.3d at 536; *Bridges v. Colvin*, 2015 WL 4878653, at *10 (E.D. Tenn. Aug. 10, 2015) (harmless error in ALJ's failure to discuss non-treating physician's opinion where opinion would support finding of "not disabled" and is consistent with ALJ's assessed RFC).

The Commissioner's arguments to the contrary are unpersuasive.  First, the ALJ's error is not limited to failing to provide good reasons for discounting Dr. Tripi's RFC.  Indeed, the ALJ did not discuss the RFC opinion at all.  Furthermore, the authority upon which the Commissioner relies to support the argument that the Sixth Circuit does not remand when an ALJ fails to acknowledge evidence from a

one-time examiner is distinguishable from this case.  In *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 505-08 (6th Cir. 2006), the court found harmless error in the ALJ's failure to evaluate a non-treating source's opinion because the "ALJ reasonably found that Lian's opinion was not as well supported as the other medical opinions, and that his assessment of Kornecky's limitations was not consistent with the record as a whole."  In *Daniels v. Comm'r of Soc. Sec.*, 152 Fed. Appx. 485, 490 (6th Cir. 2005), the ALJ referred to Dr. Pinson's opinion (the doctor's deposition testimony) but did not afford the opinion deference or specifically address the opinion.  Because Dr. Pinson was not a treating source, failure to give the opinion deference was not error.  *Id.*  Even if Dr. Pinson were a treating physician, the court stated that failure to address the deposition testimony was harmless error because the doctor's statement on disability was confusing, the ALJ noted that the doctor did not provide a physical capacity assessment, and some of the deposition statements were in response to questions on the consistency of the claimant's complaints and thus went to credibility, an area for the ALJ to address.  *Id.*  None of the situations present in *Kornecky* or *Daniels* is present here. The ALJ did not find Dr. Tripi's opinion to be free of support in the record. Moreover, Dr. Tripi's opinion is not confusing and does not go to credibility, as shown above.

Plaintiff's statement, "And, again, the ALJ relied in [sic] a perceived 'successful' job Kendra held (in 2004) to reject the opinion that Kendra could not now work," is the extent of her second RFC argument and is ambiguous. (Dkt. 16, at p. 34). The only employer she mentions by name in her brief is Costco (although sometimes it is referred to as Sam's Club). (*Id.* at p. 21). She worked at Sam's Club in 2005. (Tr. 613). It is not clear which employment in 2004 plaintiff believes the ALJ is relying on, nor has plaintiff advanced an argument about why relying on any such employment was erroneous. "[I]ssues adverted to in perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones." *McPherson v. Kelsey,* 125 F.3d 989, 995–96 (6th Cir. 1997) (citations omitted). Further, it is not for the Court to search the record for evidence to support plaintiff's argument. *See Marko v. Comm'r of Soc. Sec.*, 2017 WL 3116246, at *3 (E.D. Mich. July 21, 2017) (citing *Jones v. Comm'r of Soc. Sec.*, 2013 WL 4748083, at *8 (N.D. Ohio Sept. 4, 2013) ("[I]t is not the Court's function to search the administrative record for evidence to support [Plaintiff's] 'argument' or find law supporting [his or] her claims. This Court does not conduct a *de novo* review in social security proceedings, and certainly cannot be expected to craft an argument on [Plaintiff's] behalf.")). Therefore, plaintiff's argument here is waived.

## IV.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED IN PART**, and **DENIED IN PART** and that defendant's motion for summary judgment be **DENIED IN PART** and **GRANTED IN PART**, and that the findings of the Commissioner be **REVERSED AND REMANDED** for further proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g).

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: March 1, 2018                              s/Stephanie Dawkins Davis
                                                 Stephanie Dawkins Davis
                                                 United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on March 1, 2018, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

                                                 s/Tammy Hallwood
                                                 Case Manager
                                                 (810) 341-7850
                                                 tammy_hallwood@mied.uscourts.gov